[Civ. No. 17397.   First Dist., Div. Two.   Mar. 28, 1957.]

MERLIN FREEMAN et al., Plaintiffs and Appellants, v. THERESA ARNKE et al., Defendants and Appellants.

Hilary H. Crawford and Hilary H. Crawford, Jr., for Plaintiffs and Appellants.

Joseph A. Garry and Chas. A. Sweigert for Defendants and Appellants.

BRAZIL, J. pro tem.*—In order that the situation may be more readily understandable, we begin with a statement of the facts of the case rather than referring first to what is being appealed.

By a written lease, dated August 18, 1954, plaintiffs leased the three upper floors of the Trost Apartments from defendant for 11 years and 2 months. By its terms, plaintiffs were required to pay a minimum monthly rental of $750; and agreed to pay additional rent in an amount equal to 40 per cent ''of the amount by which the gross monthly rentals received by the lessee for the herein demised premises are in excess of Fifteen Hundred ($1500.00) Dollars during each monthly period during the term.'' The lessees were also required to ''deliver to the lessor on or before the 10th day . . . of each succeeding month during the term of this lease, a statement showing the lessee's gross monthly rentals received by the lessee during the preceding month, for the demised premises.''

The demised premises contain 42 apartments and a penthouse. Except for stoves, built-in refrigerators, linoleum, wall beds and stairs and hall carpets, the plaintiffs (lessees) are the owners of all household furniture, furniture and equipment in the leased premises, which as found by the trial court is worth in excess of $16,500. The plaintiffs had occupied the premises, as assignees under a similar previous lease, for about four years before the lease was signed on August 18, 1954. Very soon after this last date, the lessees started making separate charges to the tenants for rent and for utilities, and then reporting as gross rental only the rent, leaving out the amount collected for utilities. By April 1, 1955, the amount collected for utilities was omitted from statement of gross rent as to all of the apartments. The amount collected from the tenants for utilities was the exact amount charged to the lessees, so that plaintiffs made no profit by this arrangement. These charges amounted to $4.00 per apartment for electricity and water, and $2.43 per apartment for gas boiler, hot water and heat.

---

*Assigned by Chairman of Judicial Council.

The lessees have the absolute right, as admitted by the lessor, to charge whatever rent they pleased as long as the minimum rent of $750 is paid. The lessor believed that rents in the apartment house had been reduced when the monthly statement showed a smaller return. When the lessor found out what was going on, she called the matter to the lessees' attention, and thereafter, pursuant to demand, they paid under protest 40 per cent of the amount they received as reimbursement from tenants for utility expenses. About the same time lessor demanded in writing that the lessees supply her with a monthly statement in much greater detail than had previously been given. Mrs. Theresia Trost, the original lessor, died April 11, 1955; the named defendants taking over thereafter in their capacity as executors of her will. There were other disputes of a minor nature, which need not be related here at length, for the parties to this action have agreed on their complete settlement.

On or about November 1, 1950, Mrs. Trost leased the same apartment building to another, which lease was assigned to Mr. and Mrs. Freeman very soon thereafter, and they then took over possession and operation of the place. They have been there ever since. The furniture, which belongs to the Freemans, was acquired, along with the lease, from the original lessee. From time to time since then, the present lessees have replaced and added to the furniture. All of it, with additions and replacements, remains in the apartment house under chattel mortgage to the lessor as security for payment of the rent reserved. Apparently, there were no disagreements between the parties for the remaining four years of the lease and up until the time lessor found out in January 1955 that lessees were first reimbursing themselves for utility expense, claiming the same to be no part of gross rental.

The record discloses no difference in the terms of the two leases except in matters that can have no bearing in determining a correct result here. For example, the minimum rent was $700 per month, instead of $750; and the additional rent began when gross rentals reached a figure of $1,500 instead of $1,400 per month. The second lease refers to "demised" premises in the place of a simple reference to premises.

It is admitted by all parties that at least until the second lease was put into effect, for a period of about four years, the lessees paid to the lessors as gross rental an amount based on receipts by lessees from individual tenants without deduction for public utilities or rent for their furniture. The lessees do

not admit that this testimony is relevant. At all these times the lessees deducted, with lessor's understanding, whatever was paid the utility company for cooking gas. Originally, the latter amount was paid directly by each tenant through individual meters. This deduction continued, and was allowed when the meters were replaced by one central meter; which cooking gas theretofore had been charged to the lessees. In their monthly settlements, no distinction was made between utility bills for electricity and water, and "gas for boilers for hot water and heat"; neither being deducted. Insofar as use of an apartment by an assistant manager without rent is concerned, the parties never agreed either expressly or impliedly on their respective rights and obligations under the lease.

The first time any deduction was made by the lessee was in October 1954 (not accounted for in statement given lessor November 8, 1954) for a few apartments. By April 1, 1955, they made deductions for all of the apartments, following the practice begun after the new lease was signed, of giving each tenant two receipts, one for rent and the other for expense of utilities. Prior to this time lessees gave their tenants but one receipt and made no reference to them of a separation of rent from utility expense.

As Mr. Freeman explains it in the transcript of testimony:

"Q. I say, you considered for four years under the old lease and for several months under the new lease, until you started—— A. I paid percentage on everything I collected.

"Q. Yes. And you considered that they were the gross rentals? A. I never gave much thought until I found out I was losing several thousand a year and I couldn't figure out what was happening to me."

The seventh paragraph of the lease provides, "That the lessee will pay for all water, heat, light and power supplied to said premises."

The lessees filed an action for declaratory relief to resolve their differences, interpret some provisions of the lease and to recover judgment for claimed overpayment.

The judgment, as modified on defendants' motion for new trial, and only insofar as either party is dissatisfied with its terms, provides (1) that lessees have a right to make an arrangement with each of their tenants to pay the rent for each apartment and the utility charge incurred for the apartment separately, not including however gas for boilers for hot water and heating; (2) the plaintiffs are entitled to have

their assistant manager occupy an apartment in said premises rent free and are not thereby required to fix a rental therefor or to pay any percentage thereon to defendants; (3) plaintiffs are bound to furnish defendants monthly a statement of gross rentals which statement shall show numbers of the respective apartments, name of tenant, amount of rent received (excluding utilities as defined), date rent is paid, and date to which rent of apartment is paid; (4) plaintiffs are not entitled to deduct any amount from the gross rental of each apartment as rent for plaintiffs' furniture and (5) plaintiffs to recover $500 plus interest. Other than the provision allowing plaintiffs their costs, the judgment contains nine separately numbered orders. The foregoing numbers do not correspond with the numbers given in the judgment.

Although appellant lessor formally appealed from the entire judgment, the appeal, as indicated by the opening brief, is only

1. From "that portion of the judgment which permits lessees, in the computation of 40% of the gross rental received in excess of $1,500.00, to exclude therefrom charges for any utilities paid or incurred by lessees."

2. From "the conclusion of the Court in Par. 5 of the judgment to the effect that the Assistant Manager may occupy an apartment rent free."

3. From the judgment against them for $500 and in any event from the amount thereof; claiming that the order changing findings determines the amount to be only $320.

The appellant lessees, by their cross-appeal, have appealed from two of the provisions of the judgment, i.e.,

1. That which requires them to furnish lessor with a detailed monthly statement, and

2. That which determines they are not entitled to deduct $5.00 or any sum per month or at all from gross rentals for use of their furniture. They also attempt to appeal from all of the order which the trial court made modifying the judgment upon hearing of motion for new trial, except that they do not appeal from that part of the order which denied defendant's motion for new trial.

The lessees maintain that the parties agreed to pay according to a simple, unambiguous formula—"gross rental of the demised premises," that the lessor is entitled to what was bargained for and no more. The amount collected from each tenant for utilities, being the exact amount the utility company charges each apartment for use of its products, is not

rent at all; and is not being paid for anything which lessor has provided. Likewise, a furnished apartment rents for more than an unfurnished one; lessor does not own the furniture—therefore, lessees should be able to deduct from rent collected that portion thereof which is actually being paid for the use of the lessees' property.

■ ". . . If the contract is definite and certain it is neither necessary nor proper to rely upon the conduct of the parties for its construction. Rules of construction are resorted to for the purpose of ascertaining what the contract really was and if that matter is not in doubt, it is unnecessary to rely upon those considerations which obtain where the construction of the contract is in doubt." (*Hughes* v. *Pacific Wharf Co.*, 188 Cal. 210, 217 [205 P. 105].)

■ "As an aid in discovering the all-important element of intent of the parties to the contract, the trial court may look to the circumstances surrounding the making of the agreement . . . including the object, nature and subject matter of the writing . . . ■ Also applicable here is the familiar rule that when a contract is ambiguous, a construction given to it by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight, and will, when reasonable, be adopted and enforced by the court . . ." (*Universal Sales Corp.* v. *California Press Mfg. Co.*, 20 Cal.2d 751, 761 [128 P.2d 665]).

The judgment of a trial court refusing to enter judgment in an action for declaratory relief between lessor and lessee of a parking lot, evidently on the ground that the provision for payment of rental did not allow for controversy, was reversed. (*Lawrence Barker, Inc.* v. *Briggs*, 39 Cal.2d 654 [248 P.2d 897].) In that case the lease provides that the lessor was to receive over and above the minimum rental an amount by which 60 per cent of the gross receipts exceeded the sum of $15,000 and was to be based on gross income "derived in any manner, directly or indirectly, from the use or occupancy of said demised premises." The case was sent back to the trial court to enter a judgment interpreting the rental provisions.

"The term 'gross income' does not carry definite and inflexible meaning under all circumstances. It should be defined in such a way as to ascertain the sense in which it was used by the parties when they drew the leases here involved, . . ." Payments from hotel guests for telephone services were not

to be included in determining hotel rental under leases in which part of the rental was based on "gross income from the operation of said premises" in view of prior course of conduct of the parties. (*Marlton Operating Corp.* v. *Local Textile Mills* (1950), 137 N.Y.S.2d 438, 440.

Whatever doubts courts or lawyers may have in the term "gross rental from the demised premises," it is safe to say, knowing the parties' conduct, that they never had any doubt of its meaning; and that they conducted their mutual affairs with that common knowledge. Incidentally, neither the parties' conduct nor the wording of the lease justifies any differentiation between "utility expenses," and "gas for boilers for hot water and heat." The presence or absence of the right to deduct these expense items is the same in both instances.

What has been said about deducting expenses for gas and light applies with equal force to the right of lessee to deduct from gross rental a fair rental value for his own furniture. What at first may appear illogical, i.e., an owner cannot in this situation charge rent for his own property, assumes reason in light of the parties' conduct and the surrounding circumstances. The owner wants a percentage of the gross rentals for apartments which he places under the absolute control of the lessee under the lease. As the parties to this action agree, the lessee could leave every apartment vacant as long as he paid the minimum rent. By the same token he could improve each apartment by painting, putting in new carpets, giving better and more expensive service or by putting in as much of his own furniture as he wanted to. By so doing he could charge more rent, thus benefiting himself and the lessor. The lessor still is entitled to a percentage of everything received as rent even if a portion of that is attributable to the lessee's property or business ability. With full knowledge of the exact terms of the lease, the parties thereto construed the lease, on the first of each month for at least four years, when statements of gross rentals were given and received, to mean that if the lessee kept his own furniture in or put new furniture in the place, the lessor was still going to get a percentage of gross rental of the apartment as it was rented—a furnished apartment. Apparently, neither party believed any right existed in the lessee to make such a deduction, for it wasn't mentioned until February 1955 at the earliest, when Mr. Freeman said he talked to lessor's agent Mr. Recht about it. The whole idea of charging for the furniture, probably arose

from a facetious remark of Mr. Recht. Mr. Freeman testified that: ''Along about the latter part of January or the first part of February, I was talking to Mr. Recht about separating the utilities and he said then that I might as well separate the furniture and deduct the cost of the janitor too. Now, that would be the first time, to my recollection of discussing the separation of the furniture.''

There is nothing in the written lease, nor in the parties' conduct interpreting that lease, which justifies the portion of the judgment (Item 7 thereof) requiring the lessees to ''furnish to the defendants monthly, on or before the 10th day of each month, a statement showing the plaintiffs' gross monthly rentals received by plaintiffs . . . that said statement shall show the numbers of the respective apartments, the name of the tenant thereof, amount of rent received . . . date that apartment rent is paid, date to which rent of apartment is paid.'' In this regard, all lessees are required to do is to ''deliver to the lessor on or before the 10th day of October, 1954, and on or before the 10th day of each succeeding month during the term of this lease, a statement showing the lessee's gross monthly rentals received by the lessee during the preceding month for the demised premises,'' as is clearly set forth in the lease.

The trial court's determination in Item 5 of the judgment that ''lessees are entitled to have their assistant manager occupy an apartment in said premises rent free and that the plaintiffs are not bound to fix an arbitrary rent, or rental value, on said apartment or to pay any percentage thereon to the defendants,'' appears reasonable. The evidence shows that the assistant manager receives less wages in money because he occupies an apartment rent free, but it also shows that the assistant manager is of greater value by reason of his living in the building rather than off the premises. Actually, no rent is received for that apartment as such, so there is nothing received for which the lessee can be charged. The lessor, as well as the lessees, benefit from this arrangement, for gross income of the place would undoubtedly be greater than if he lived off the premises and rented that same apartment to another.

Of the $500 judgment awarded to plaintiffs, $320 represented payment under protest on utilities and $180 was for rent paid under protest by plaintiffs for their own apartment, which, all agree, they need not have accounted for.

The judgment is affirmed except as portions thereof are

modified or reversed: Those portions which give plaintiffs (lessees) the right to deduct from gross rental, and to issue separate receipts therefor, for actual utility bills for water, gas and electricity, and those portions which require plaintiffs (lessees) to deliver to defendants (lessors) a monthly statement on or before the 10th day of each month containing anything more than "gross monthly rentals received by the lessees during the preceding month for the demised premises" are hereby reversed. That part of the judgment awarding plaintiffs $500 from defendant is modified to provide for an award of $180.

The attempted appeal from the order made on defendants' motion for new trial amending the judgment is dismissed. The entire matter has been considered by the court on the appeal from final judgment.

The trial court is ordered to enter judgment in accordance with indications therefor, set out in this opinion.

Affirmed, modified and reversed in the particulars hereinabove mentioned.

Each party to this action shall pay his own costs on appeal.

Kaufman, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied April 26, 1957.