Filed 12/22/25

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

|  |  |
|---|---|
| JOHN R. DE PAOLO, as Trustee, etc., | ) 25APLC00029 |
| | ) Van Nuys East Trial Court |
| Plaintiff and Respondent, | ) No. 24VEUD02739 |
| | ) |
| v. | ) |
| | ) |
| JENNY ROSALES, et al, | ) |
| | ) **OPINION** |
| Defendants and Appellants. | ) |
| | ) |
| | ) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael B. Wilson, Judge. Affirmed.

LAKESHORE LAW CENTER, Jeffrey N. Wilens and Macy Wilens for Defendants and Appellants.

Frank D. Rubin for Plaintiff and Respondent.

\*          \*          \*

1

Defendants and appellants Jenny Rosales and Richard A. Charlemagne[1] appeal the judgment entered in favor of plaintiff and respondent John R. De Paolo, Trustee of the De Paolo Trust Dated August 14, 1995, following a bench trial. Defendants contend that evidence was insufficient to prove a valid termination notice was served; the 30-day notice was void because it violated the Tenant Protection Act which applies to "term[in]ation of a tenancy based on an employment agreement"; Rosales was a tenant and "not merely an employee provided housing as compensation for her job"; and the termination notice was also defective because it was for 30 days instead of 60 days. As explained below, we affirm.

PROCEDURAL BACKGROUND

*Complaint*

On August 22, 2024, plaintiff (owner and trustee) filed an unlawful detainer complaint against Rosales and all unnamed occupants based on a 30-day notice to quit. The complaint, which indicated that the tenancy was subject to the Tenant Protection Act of 2019 (TPA) (Civ. Code § 1946.2), alleged that on or about December 1, 2020, Rosales and "all unnamed occupants of the premises" agreed to pay monthly rent of $710 pursuant to a written agreement. A copy of the written "resident manager's agreement" was attached to the complaint. It was signed and executed on December 1, 2020, by John De Paolo, as trustee of the John De Paolo trust and owner, and Jenny Rosales as resident manager. The agreement provided in pertinent part, as follows:

> "1) Owner has an ownership interest in the real property located at 14000 Dickens Street, Sherman Oaks, California (the 'Premises') . . . . [¶] . . . [¶] . . . Owner and Resident Managers[2] agree as follows:
>
> 1. Hiring. Owner hereby employs Resident Managers and Resident Managers hereby accept said employment as provided for in this Agreement. The relationship between Owner and Resident Managers are solely one of employer and employee. [¶] . . . [¶]

---

[1]Because there are two defendants involved in this action, we refer to them separately by their last names in the interests of clarity. Any reference to "defendants" refers to both Rosales and Charlemagne collectively.

[2]The plural term "resident managers" appears throughout the agreement, but Rosales was the only person who signed the agreement as the "resident manager" and that she was the only resident manager involved in the agreement was undisputed at trial.

6. Residence and Rent. Throughout the term of this Agreement, Resident Managers shall reside in Unit No.106, or in such other unit at the Premises . . . Owner's sole discretion[ may] designate. Resident Managers' residency at the Premises is required for the convenience of Owner. Owner and Resident Managers agree that at the present time, the reasonable, fair and ordinary rental value for Resident Managers' said existing unit is $780.00 per month, but Resident Managers shall only be required to pay rent of $710.00 per month, payable in advance on the first day of each month so long as this Agreement is in effect and unmodified . . . . [¶] . . . [¶]

7.1 Resident Managers' sole and exclusive collective compensation under this Agreement for all hours worked pursuant to paragraph 4 hereof shall be the gross sum of $710.00 per month less any amounts required to be deducted by any governmental authority. Owner shall pay one-half of said compensation to Resident Managers on a semi-monthly basis. [¶] . . . [¶]

11. Termination. Owner's employment of Resident Managers is "AT WILL." Owner may terminate this Agreement and Resident Managers' employment at any time with or without cause and with or without advance notice. Resident Managers may terminate this Agreement with or without cause only be [*sic*] giving Owner thirty (30) days prior written notice . . . . Within 30 days following any termination of Resident Managers' employment or at the end of 30 days following Resident Managers' Notice, whichever first occurs, Resident Managers shall vacate the unit at the Premises in which the Resident Managers are then residing, restore possession of the unit to Owner free of all other occupants, and leave the unit in a clean condition and in a good state of repair. If Resident Managers fail to so vacate the unit and restore possession thereof to Owner, Resident Managers shall be liable to owner for the reasonable rental value of the unit following the termination . . . . Any termination effected pursuant to this paragraph shall be by written notice given by one party to the other by personal service or certified mail, return receipt requested. Service shall be deemed complete at the time of personal service or deposit into the mail. In the event that Resident Managers' employment is terminated, all compensation and payments to be made pursuant to this Agreement shall be prorated through the termination date."

The complaint further alleged that Rosales's "resident manager's services terminated as of August, 2023" and defendant and all unnamed occupants failed to comply with the requirements of the 30-day notice by the end of the compliance period. A copy of the notice, which was dated July 10, 2024, was attached to the complaint, and it stated, in pertinent part, that defendant and all others in possession were required to quit and deliver possession of the premises within 30 days after service of the notice or by Monday, August 13, 2024 at noon, whichever was later in time. The notice read that "[t]his notice to quit is served upon you for the purpose of enforcing your written August 9, 2023 termination as employee (on site

manager).” The notice was served by posting on July 10, 2024 and by mailing on July 11, 2024. The proof of service was attached to the complaint. Plaintiff requested forfeiture of the agreement and any further relief the court deemed just and proper. In an addendum to the complaint, plaintiff indicated “no claim to holdover damages [was] part of this UD action” and that the action only concerned plaintiff obtaining possession of the premises from defendants.

*Answer*

On September 17, 2024, defendants filed an answer raising general denials and affirmative defenses. Among the documents attached to the answer was a purported tenant ledger reflecting that monthly rent of $710 had been “paid and cleared” from January 1, 2021 through April 1, 2024. Beginning May 1, 2024 through September 1, 2024, the ledger reflects that the rent was paid, but not cashed.

FACTUAL BACKGROUND

*Trial*

Trial took place on November 7, November 21, and December 23 of 2024.

<u>Plaintiff's Case</u>

Plaintiff testified as follows. He was the trustee of the De Paolo trust and was charged with the care of the premises. In November 2020, he hired Rosales as the on-site manager and she was given Unit 106 as a manager's unit. The manager's contract, which was admitted into evidence as exhibit 1, was executed and signed in person by both De Paolo and Rosales on December 1, 2020, and took effect the same day. Rosales signed the document in plaintiff's presence. The termination letter, dated August 9, 2023, which was entered into evidence as page one of exhibit 2 stated, in pertinent part, “beginning Friday, August 11, 2023, you will no longer be the manager of the [premises]. Your duties terminate at 11:59PM, August 10, 2023. [¶] As per the agreement signed by you, this is your 30 [*sic*] notice to move from your current residence at Unit #106.” The second page of exhibit 2 was an email from Rosales dated August 10, 2023, that read, “John and Hilda, [¶] I am in receipt of your wrongful termination letter as of August 10, 2023, dated August 9, 2023. . . . I consider this retaliation due to reports I have made against your illegal business practices.”

4

Since September 2023, plaintiff had returned each and every check sent by defendants and had not accepted any of their funds. However, at some point plaintiff realized that Rosales had "forced payment" into his account. Exhibit 6 was a letter dated September 7, 2023, written by plaintiff and addressed to defendant Rosales. It read, in pertinent part, "you 'force fed' a deposit into my checking account in the amount of $710.00. [¶] This was done without my permission. [¶] You have no lease agreement and you are not a tenant at [the premises]. Also you are no longer a manager. [¶] . . . [¶] I am returning the amount to you via postal money order." A copy of the money order was included at the bottom of the exhibit. Plaintiff sent the payments back every month and did not cash the checks after Rosales's employment was terminated. Plaintiff did not enter into oral contract with defendants and conducted all of his business in writing.

As of the date of the trial, defendants were still in possession of the premises. Plaintiff's exhibits 1 through 8 were admitted into evidence.

Defense Case

Rosales testified that she worked part time for plaintiff and his wife "at all of their properties." In October 2020, plaintiff offered her a position as on-site manager at the premises and said she would not need to pay rent as part of her compensation. She had "never paid any rent to [plaintiff and] our verbal agreement said that it was free rent." She moved into the apartment on November 11, 2020, and started working immediately. On Thanksgiving of 2020, Rosales reconciled with Charlemagne, who was the father of her children. When Rosales shared this development with plaintiff, he suggested, "why don't I just move my family in?" Plaintiff asked Rosales to "collect the rental application and run a credit check" on Charlemagne and stated that he wanted a month-to-month lease for Charlemagne. The application was approved and Charlemagne paid a security deposit and prorated rent. Rosales "collected a $1,000 check from [Charlemagne] and drove it to [plaintiff's] house." Plaintiff "endorsed all the checks and personally deposited the checks into his own account." Defendant Charlemagne moved in about six weeks after Rosales did.

On cross-examination Rosales testified that under the "additional occupants" section of her rental application dated November 30, 2020, she listed Charlemagne as her spouse. She

5

testified that she was "guilty of not knowing how to legally define [her] relationship with [Charlemagne]. We've been on and off together for 16 years. We have two children. He's more than my boyfriend but not quite my husband. I'm sorry, I don't know the legal term to define our relationship."

Charlemagne testified that when he completed the rental application, he listed Rosales as his spouse even though they were not married. He never had or signed a lease agreement or rental agreement for the premises and never asked for an application. He moved in early December 2020.

Pointing to "discrepancies" in the resident manager's agreement, defendants objected to admission of the agreement into evidence, arguing that it was a forged document and that Rosales never signed it.

Rebuttal

Hilda De Paolo, plaintiff's custodian of records, was called to testify. In her capacity as custodian of records, she maintained the manager's agreement in her regular business files. The purported "original" signed manager's agreement was presented to the court. After handling and examining the document, the court noted for the record that "there are indentations on the back from signatures, from above the– behind the signature of Jenny Rosales" tending to indicate that a "live person" signed it. The court admitted exhibit 1 into evidence over defense objection.

Defense moved to strike the admission of exhibit 1 pointing out inconsistencies in the document. The court declined to do so stating that it had been identified and authenticated, but noted that, based on defense argument, it would take a look at it, and determine what weight to give it.

*Trial Court's Ruling*

The court found that Defendant Rosales did not have an independent right of possession of the unit that was separate and apart from the "Resident Manager's Agreement" and her right to occupancy of the premises was dependent upon her continuation of her employment as the resident manager. "The parties' agreement clearly stated that Defendant Rosales' occupancy was dependent upon the continuation of the employer-employee relationship and that when the

6

employer-employee relationship was terminated, the occupancy would end." "An essential element of an unlawful detainer predicated on termination of the defendant tenant's employment is that the employment expired or was otherwise 'lawfully terminated.' (Code Civ. Proc., § 1161(l).) . . . [I]f the tenant can show that termination of her employment was in retaliation for legal activities, then she would have a valid defense to the unlawful detainer action." The court found that Rosales had not met her burden of producing evidence sufficient to show that the termination of her employment was unlawful or retaliatory. Accordingly, Rosales was not entitled to reside at the premises post termination.

The court found that Charlemagne did not create a separate leasehold with plaintiff, but rather took possession of the premises as an additional occupant pursuant to the terms of Rosales's resident manager's agreement. Accordingly, his occupancy was dependent on Rosales's employment and once Rosales's employment ended, he was no longer entitled to reside at the premises.

The court ordered judgment entered in favor of plaintiff and against defendants, awarded plaintiff possession and restitution of the premises, canceled the rental agreement and forfeited the lease agreement.

Defendants timely appealed the judgment.

DISCUSSION

*Rosales's Occupancy was Dependent on Her Employment as Resident Manager*

Defendants' contentions on appeal are entirely premised on their position that they were tenants. However, the facts adduced at trial, including defendants' own testimony, make it abundantly clear that they were not.

Applicable Law

An unlawful detainer occurs when a person remains in possession of property after the expiration of the term for which it is let to him. This can occur not only in a standard landlord-tenant situation but also in a case where the person ". . . became the occupant of the premises as a servant, employee, agent, or licensee and the relation of master and servant, or employer and employee, or principal and agent, or licensor and licensee, has been lawfully terminated." (Code Civ. Proc., § 1161, subd. (1).)

7

A resident manager whose tenancy is premised upon employment with the landlord (i.e., the right of occupancy is part of the employment compensation package) may be evicted upon termination of her employment. The discharge from employment terminates both the employer-employee relationship and the tenancy. (Code Civ. Proc., § 1161, subd. (1); *Lombardo v. Santa Monica Young Men's Christian Assn.* (1985) 169 Cal.App.3d 529, 541 ["'"[i]f a person occupies premises belonging to his employer as a part of his compensation, he has no right to continue his occupation of the premises on the termination of his employment . . ."'" (*Eichhorn v. De La Cantera* (1953) 117 Cal.App.2d 50, 56.)"])

"A person who occupies premises belonging to his employer as part of his compensation has no right to continue in possession on the termination of his employment. [Citation.] The discharged person is a tenant at sufferance and is entitled to no notice before an unlawful detainer action is commenced. [Citation.]" (*Karz v. Mecham* (1981) 120 Cal.App.3d Supp. 1, 4; cf. *Chan v. Antepenko* (1988) 203 Cal.App.3d Supp. 21, 24-25 [terminated employee occupant is a mere "licensee," not a tenant and is not protected by local eviction controls], overruled in part by *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1041 [rejecting the position that discharged employees may be dispossessed without regard to the circumstances surrounding their occupancy and by means of the landlord's self-help].) If the employee occupant holds over, the landlord is automatically entitled to bring an unlawful detainer action premised upon allegations that the employment expired or was otherwise "lawfully terminated." (See Code Civ. Proc., § 1161, subd. (1).)

Standard of Review

If "'the issue is presented to the court on the basis of undisputed facts and uncontroverted evidence and only a question of the application of the law to those facts need be answered,' appellate review is de novo." (*Spinks v. Equity Residential Briarwood Apartments*, *supra*, 171 Cal.App.4th at p. 1025.) "'Whether a contract confers a mere license or instead creates a tenancy is a question of law.'" (*Id.* at p. 1040.) "'"The . . . interpretation of a statute, is, of course, a question of law" and is therefore subject to our de novo review.'" (*L&S Framing, Inc. v. Occupational Safety & Health Appeals Bd.* (2023) 93 Cal.App.5th 995, 1015.) However, "'we must resolve evidentiary conflicts in favor of the prevailing party, and view the

8

evidence, drawing all reasonable inferences, in the light most favorable to [the prevailing party]. So long as the whole record so viewed reveals in support of the judgment evidence of ponderable legal significance, i.e., evidence which is reasonable, credible, and of solid value, we must affirm.'" (*Id*. at pp. 1015-1016.)

Analysis

Evidence was presented at trial that Rosales signed a resident manager's agreement on December 1, 2020, which stated that her occupancy of the premises was at plaintiff's "sole discretion"; that her residency was "required for the convenience of [plaintiff]"; that her employment as resident manager was "at will" and that plaintiff could terminate the agreement and her employment as resident manager "at any time with or without cause and with or without advance notice"; and defendant was required to vacate the premises and restore possession of the unit to plaintiff "free of all other occupants" within 30 days following termination of defendant's employment as resident manager or at the end of 30 days following notice, whichever came first.

While Rosales disputed the authenticity of the signatures on the resident manager's agreement, she never disputed that she resided at the premises as the resident manager and when asked by the court if she was the resident manager, stated that she worked for plaintiff and the premises was one of her "assigned properties that [she] worked for." A termination letter dated August 9, 2023, admitted as evidence at trial stated, "beginning Friday, August 11, 2023, you will no longer be the manager of the [premises]. Your duties terminate at 11:59PM, August 10, 2023. [¶] As per the agreement signed by you, this is your 30 [*sic*] notice to move from your current residence at Unit #106." The second page of this exhibit was an email from Rosales dated August 10, 2023, that acknowledged receipt of the termination letter and the notice, reading, "John and Hilda, [¶] I am in receipt of your wrongful termination letter as of August 10, 2023, dated August 9, 2023. . . . I consider this retaliation due to reports I have made against your illegal business practices."

In contrast to this mountain of evidence substantiating that Rosales was indeed a resident manager whose occupancy of the premises was contingent upon and only existed as a result of her employment, there was a complete dearth of evidence that would support any argument that

9

she was entitled to occupancy after her termination. As it is settled that a person who occupies premises belonging to her employer as part of her compensation has no right to continue in possession upon termination of her employment (*Karz v. Mecham*, *supra*, at p. Supp. 4), and given that Rosales signed an agreement stating she would vacate the premises upon termination of her employment, and then failed to do so, plaintiff's right to initiate unlawful detainer proceedings against defendants was triggered. (Code Civ. Proc., § 1161, subd. (1); *Chan, supra*, 203 Cal.App.3d at pp. Supp. 24-25.) Here, as the terms of the resident manager's agreement were unambiguous, "definite and certain" as to Rosales's obligation to vacate the premises in the event of her termination, we need not look to or consider defendants' post-termination conduct to determine the intent of the parties when entering into the agreement. (*Freeman v. Arnke* (1957) 149 Cal.App.2d 509, 514 ["'If the contract is definite and certain it is neither necessary nor proper to rely upon the conduct of the parties for its construction'" or to "'discover[] the all[-]important element of intent of the parties to the contract'"].)

Charlemagne testified that he never signed any type of lease agreement, and Rosales testified that Charlemagne only moved into the premises with her after she had been there as the resident manager. By entering into the manager's agreement, Rosales agreed that upon her termination from employment as resident manager, Rosales along with any additional occupants would be required to vacate the premises. Both defendants admitted that in listing one another as additional occupants on their respective rental applications, they both separately indicated that they were one another's spouses, but that in fact they were not married. This evidence establishes that Charlemagne was only able to occupy the property as an additional occupant or guest of Rosales. He had no independent right as a tenant to possess or occupy the premises.

*Applicability of the Tenant Protection Act*

Defendants contend that because there was "no evidence, substantial or otherwise, that [the] 'California law notice' was provided as an addendum to the lease or rental agreement or as a written notice signed by the tenant," the TPA was violated thereby rendering the 30-day notice void. As we have found no published opinion addressing whether individuals occupying a property that is subject to the TPA pursuant to a resident manager's agreement are considered

10

tenants for the purposes of the applicability of TPA protections post the resident manager's employment termination, we undertake that task here.

Applicable Law and Standard of Review

The TPA of 2019 (Civ. Code, § 1946.2 et seq.) is a comprehensive anti-rent gouging and eviction control law. (*Borden v. Stiles* (2023) 92 Cal.App.5th 337, 346.) It provides, in relevant part that, "after a tenant has continuously and lawfully occupied a residential real property for 12 months, the owner of the residential real property shall not terminate a tenancy without just cause, which shall be stated in the written notice to terminate tenancy. [¶] . . . [¶] (1) At-fault just cause, . . . means any of the following: [¶] . . . [¶] (J) The employee, agent, or licensee's failure to vacate after their termination as an employee, agent, or a licensee as described in paragraph (1) of Section 1161 of the Code of Civil Procedure." (Civ. Code, § 1946.2.) "'Tenancy' means the *lawful occupation* of residential real property and includes a lease or sublease." (Civ. Code § 1946.2, subd. (k)(3), emphasis added.)

"An owner of residential real property subject to this section shall provide notice to the tenant as . . . [¶] . . . an addendum to the lease or rental agreement, or as a written notice." (Civ. Code § 1946.2, subd. (f).) "The notification or lease provision shall be in no less than 12-point type, and shall include the following: [¶] 'California law limits the amount your rent can be increased. See Section 1947.12 of the Civil Code for more information. California law also provides that after all of the tenants have continuously and lawfully occupied the property for 12 months or more or at least one of the tenants has continuously and lawfully occupied the property for 24 months or more, a landlord must provide a statement of cause in any notice to terminate a tenancy. See Section 1946.2 of the Civil Code for more information.'" (Civ. Code § 1946.2, subd. (f)(3).) "An owner's failure to comply with any provision of this section shall render the written termination notice void." (Civ. Code § 1946.2, subd. (g).)

"We review matters of statutory interpretation de novo. [Citation.] 'Statutory interpretation requires us "to ascertain and effectuate the intended legislative purpose." [Citation.] We consider the provisions' language in its "broader statutory context" and, where possible, harmonize that language with related provisions by interpreting them in a consistent fashion. [Citation.] If an ambiguity remains after this preliminary textual analysis, we may

11

consider extrinsic sources such as legislative history . . . ' [Citation.] ''In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." [Citation.]' [Citation.]" (*Borden v. Stiles*, *supra*, 92 Cal.App.5th at pp. 345-346.)

Analysis

On the complaint, plaintiff indicated that the tenancy was subject to the TPA and that the tenancy was terminated for at-fault just cause pursuant to section 1946.2, subdivision (b)(1). Defendants contend that plaintiff's concession to the applicability of the TPA as reflected on the complaint, coupled with plaintiff's failure to include the language required by the relevant portion of the TPA (Civ. Code § 1946.2, subd. (f)), which defendants refer to as the California law notice, "as an addendum to the lease or rental agreement, or as a written notice signed by the tenant" render plaintiff's written termination notice void. We disagree.

The ultimate question before us is whether a terminated resident manager's continued occupancy of a premises belonging to her employer, that she was only permitted to occupy as part of her employment compensation, qualifies as a tenancy for the purposes of the TPA. We conclude it does not. In order to qualify as a tenancy within the meaning of the TPA, the occupant's occupation of the premises must be lawful. (Civ. Code § 1946.2, subd. (k)(3).) After Rosales was terminated from her position as resident manager, and the 30-day period established in the resident manager's agreement elapsed, her occupancy of the premises became unlawful. (See *Karz v. Mecham*, *supra*, at p. Supp. 4.)

The case law is clear, a terminated resident manager who refuses to vacate becomes either a tenant at sufferance or a licensee.[3] (See *Karz v. Mecham*, *supra*, at p. Supp. 4 [tenant at sufferance]; *Chan, supra*, 203 Cal.App.3d at pp. Supp. 24-25 [licensee].) A tenant at sufferance is a person who lawfully entered into possession of a property but continues to occupy it without any legal title or the landlord's consent after the termination of the tenancy. (*Roxbury Lane LP v. Harris* (2023) 88 Cal.App.5th Supp. 9, 15.) A "licensee is a person or entity authorized to do a particular act or acts on the property of another without possessing any

---

[3]The determination of whether defendant was a licensee or tenant at sufferance is not dispositive to the resolution of this appeal. (*Borden v. Stiles*, *supra*, 92 Cal.App.5th at p. 348.)

estate" or interest in the land.  (*Jenson v. Kenneth I. Mullen Inc.* (1989) 211 Cal.App.3d 653, 657.)  The authorization to perform certain acts without conferring any interest in the land is considered "a personal privilege."  (*Ibid.*)  A license is normally revocable at will.  (*Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 36.)  Whether the terminated resident manager is classified as a tenant at sufferance or a licensee, the law is clear that under either classification, the terminated employee is not considered a tenant.  (*Chan*, *supra*, 203 Cal.App.3d at p. Supp. 25 [a terminated employee who entered the land as a licensee "could not convert his status into that of a tenant by refusing to vacate upon expiration of his employment"].)

Thus, while the TPA includes in its list of scenarios that constitute "at fault-just cause" eviction situations where a lawful tenant may have at one time been "an employee, agent, or a licensee" who failed to vacate after they were terminated as an employee, agent, or licensee, the mere contemplation or existence of these scenarios does not serve to unilaterally transmute the status of a terminated resident manager into that of a lawful tenant where the resident manager's initial occupation of the property was premised solely upon employment.  (See *Chan*, *supra*, 203 Cal.App.3d at p. Supp. 25 [terminated employee "could not convert his status into that of a tenant by refusing to vacate upon expiration of his employment"].)  Caselaw dictates that such an individual is either a tenant at sufferance or licensee who enjoys no tenant protections, including notice.  (See *Id.* at pp. Supp. 25-26; *Karz v. Mecham*, *supra*, at p. Supp. 4.)  And unless, and until, some action is taken by the parties that reflects their mutual assent to change the nature of the agreement between the two of them, such an individual remains so classified.  (See *Borden v. Stiles*, *supra*, 92 Cal.App.5th at p. 349.)

Defendants contend that they "continuously and lawfully occupied" the premises from December 2020 until the 30-day notice was served and expired on August 13, 2024. Defendants seem to take the position that because they refused to vacate the premises after service of the employment termination letter and 30-day notice of termination of tenancy on August 10, 2023 and purported to make rent payments thereafter, Rosales's status as an employee-occupant was somehow transformed into a tenancy entitling her to all of the rights and protections afforded under the TPA.  We disagree.

"Absent subsequent events that might have created a new tenancy," an occupant's continued occupancy of the premises after the termination of the original agreement is unlawful. (See *Borden v. Stiles*, *supra*, 92 Cal.App.5th at p. 349 [death of original property owner constituted a triggering event terminating original tenancy of employee by operation of law, making employee's continued occupancy unlawful "absent subsequent events" to create a new tenancy].) No such subsequent events took place here. That defendants "force fed" rent payments into plaintiff's account and continued to occupy the premises after Rosales's termination does not change our conclusion, as plaintiff testified that once he detected the unauthorized account activity, he immediately returned the payments to defendants.

In sum, defendants' continued occupancy of the premises after Rosales's termination was unlawful, rendering the TPA inapplicable to the instant unlawful detainer proceedings. (See *Borden v. Stiles*, *supra*, 92 Cal.App.5th at p. 349 ["Such an occupancy would be unlawful, rendering section 1946.2 inapplicable to the eviction proceedings initiated"]; see generally Civ. Code, § 1946.2, subd. (k)(3) [tenancy is lawful occupation of residential real property].) Our interpretation does not frustrate the TPA's legislative intent to prevent excessive rent increases. (See *2710 Sutter Ventures, LLC v. Millis* (2022) 82 Cal.App.5th 842, 864 [the TPA notice requirement "serves to protect against abusive evictions in that it acts as a partial deterrent to a landlord's disingenuous use of the right to evict . . . to evade . . . rent control law."].)

*Lawful Employment Termination*

The defense of retaliatory eviction is an affirmative defense permitted by statute and common law in an unlawful detainer proceeding. (Civ. Code § 1942.5; *Boyd v. Carter* (2014) 227 Cal.App.4th Supp. 1, 7 (*Boyd*); *Vargas v. Municipal Court* (1978) 22 Cal.3d 902, 916 (*Vargas*).) "[W]here . . . the tenant is asserting that the eviction is in retaliation for having exercised legal rights, a tenant is entitled to raise these issues as affirmative defenses in an unlawful detainer proceeding as they go to the issue of the landlord's right to possession—the core of the proceeding." (*Boyd*, *supra*, 227 Cal.App.4th at p. Supp. 9.) Where tenant-employees occupy the premises because of their status as employees, they would be in unlawful detainer only if the employer-employee relationship was "lawfully terminated." (See *Vargas*, *supra*, 22 Cal.3d at p. 907, fn. 1.) If a tenant-employee can prove unlawful termination of the

14

employment relationship, then they cannot be found guilty of "unlawfully detaining" the premises. (*Id*. at pp. 913–917.) "If [the] defense is proven, the landlord is not entitled to a judgment of possession as a matter of law." (*Boyd*, *supra*, 227 Cal.App.4th at p. Supp. 9.) Defendant bears the burden of proving that the plaintiff had a "retaliatory motive by a preponderance of the evidence" and that the termination of her employment was unlawful. (See *Western Land Office, Inc. v. Cervantes* (1985) 175 Cal.App.3d 724, 733 (*Cervantes*).)

The trial court found that Rosales had not met her burden of production of evidence sufficient to show that termination of her employment was unlawful or that her eviction was retaliatory. In our review of the record, aside from Rosales's allegation in her email dated August 10 in response to the employment termination letter and 30-day notice, and her statement at trial that plaintiff was "violating [her] rights," we found no evidence that demonstrated that plaintiff brought the instant action for the purpose of retaliating against Rosales because she lawfully and peaceably exercised any rights under the law. The trial court correctly concluded that defendants failed to meet their burden of establishing a retaliatory motive. (*Cervantes*, *supra*, 175 Cal.App.3d at p. 733.)

*Notice*

Defendants allege that the judgment must be reversed because the evidence was insufficient to prove that a valid termination notice was served as required by the TPA. As discussed in detail *ante*, Rosales had no right to occupy the premises independent of her employment as the resident manager and Charlemagne's ability to occupy the premises was only as one of Rosales's additional occupants. Thus, once Rosales's employment terminated, so did both defendants' right to occupy the premises. As they were not lawful tenants, the TPA protections, including notice, did not apply. (*Chan*, *supra*, 203 Cal.App.3d at pp. Supp. 24-25; accord, *Karz v. Mecham*, *supra*, 120 Cal.App.3d at p. Supp. 4.)

Indeed, the evidence adduced at trial established that Rosales signed the resident manager's agreement wherein she explicitly agreed that plaintiff could terminate her employment at any time with or without cause, without advance notice and that she and her occupants were required to vacate the premises within 30 days following her employment

termination.  After terminating Rosales, plaintiff did in fact serve her with a 30-day notice to quit.  However, that plaintiff chose to give defendants notice does not change the fact that they were entitled to none.

## DISPOSITION

The judgment is affirmed.  Plaintiff is awarded costs on appeal.

_____
Guillemet, J.

We concur:

_____                          _____
Ricciardulli, Acting P. J.                                   Hobbs, J.